# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **MYRNA ROOS,** | § | |
| **Plaintiff** | § | **CIVIL ACTION** |
| | § | |
| **VS.** | § | |
| | § | **NO. A:12CV410** |
| **AUSTIN INDEPENDENT SCHOOL** | § | |
| **DISTRICT,** | § | |
| **Defendant** | § | **JURY REQUESTED** |
| | § | |

## ORIGINAL COMPLAINT

### Jurisdiction and Venue

1.    This action alleging disparate treatment race discrimination, retaliation, and hostile work environment violations against Defendant Austin Independent School District ("AISD") arises under the Civil Rights Acts of 1964 and 1991 as amended, and codified at 42 U.S.C. §2000e et seq. (Title VII).  The Court has jurisdiction under the Fourteenth Amendment to the U.S. Constitution, as codified in the remedial legislation listed above and other federal statutes.

2.    All conditions precedent have been exhausted and/or performed prior to the filing of this original complaint: 1) Roos raised the issues of race discrimination, retaliation, and hostile work environment with the EEOC, within 300 days of the date of the adverse employment actions complained of herein (one or more issues raised by Roos in her EEOC charge and during the investigation that occurred within 300 days of the filing of her charge are of the same type of discrimination linking them in a continuing violation of recurring events such that a hostile environment was established and maintained over a period of years from no later than August 2007 through to the present); a federal notice of right to sue letter was received by Roos from the EEOC no earlier than February 10, 2012 and therefore this complaint was timely filed.  See

Exhibit A, which contains copies of Roos's charge, right to sue letter, and date-stamped envelope. Additionally, post-charge filing discrimination, retaliation, and/or harassment has continued to occur as alleged below, which does not require additional conditions precedent to be met beyond those taken by Roos as described above.

3. Further, jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. §2000e-5(f)(3).

4. The acts or omissions, which serve as the basis for this cause of action, occurred in Travis County, State of Texas and in this Division of the Western District of Texas; therefore venue is proper in this Court. 42 U.S.C. §2000e-5(f)(4) and 28 U.S.C. §1391(b) and (c).

## Parties

5. Myrna Roos ("Roos") is a natural person whose primary residence is located in Travis County, Texas. Roos may be contacted through her attorney of record in this cause.

6. Defendant, Austin Independent School District ("AISD"), is a school district operating in Austin, Travis County, Texas and may be served process via its Superintendent, Meria Carstarphen, PhD, at 1111 W. 6th St., 2d Floor, Austin, Texas 78703.

## STATEMENT OF THE CASE

7. Roos brings this action under Title VII of the Civil Rights Act of 1964 and 1991, as amended, and codified at 42 U.S.C. §2000e et seq. against AISD.

8. Roos complains of racially discriminatory and/or retaliatory disparate treatment and hostile work environment in the terms and conditions of her employment that include but are not necessarily limited to the following disparate and harassing adverse actions:

- Public humiliation,
- Lower Pay,
- Standards and work rules regarding multiple issues, including but not limited to:
  - taking and/or accounting for leave,

- o  accounting and/or reimbursement of expenses incurred for the job,
- o  calendaring,
- o  attending conferences,
- o  assigning workloads/duties,
- o  setting deadlines,
- o  enforcing state laws,
- o  enforcing work requirements,
- o  conducting peer reviews,
- o  seating and/or participating during departmental meetings,
- o  performing job duties,
- o  setting performance criteria,
- o  scheduling meetings,
- o  assigning and/or providing resources, and
- o  providing notice of any work place changes
- • Denial/delay of professional development and/or training,
- • Denial of promotions and promotional opportunities,
- • Fabricated, unverified, and/or uninvestigated complaints and accusations of poor performance,
- • Unsupported lower performance evaluation ratings,
- • Efforts to Seek/Pressure employees to provide negative reports/evaluations,
- • Unsupported Disciplinary Actions, and
- • Termination.

9.     After Roos's initial opposition in the Summer of 2007 to the racially discriminatory conduct that she observed from Ann Jinkins and Janna Lilly, as reported to AISD HR, Roos was subjected to consistent disparate treatment in the terms and conditions of her employment, as described above, which created a hostile work environment during her employment at AISD.

10.    As a result of the severe and/or pervasive harassment to which AISD has subjected Roos, she has suffered physical manifestations of the stress resulting in Roos being advised and/or ordered to leave work by medical professionals for extended periods of time to protect her health.

11.    Roos has sustained and continues to sustain economic and non-economic damages in lost back pay, benefits, front pay, humiliation, loss of enjoyment of life, mental anguish, loss of career opportunity, and other damages.

## FACTUAL ALLEGATIONS

12.     Roos, an African American, at all times while employed at AISD, was qualified for her position of employment at AISD.

13.     Roos began employment with AISD on approximately August 1994.

14.     For the last 11 years, Roos has been a Special Education Coordinator ("SpEdC") consulting with, advising, and assisting various numbers and configurations of campuses across the District with their compliance with Special Education requirements and the provision of services to special needs students, which is a position requiring detailed and specialized knowledge of federal and state law and regulations.

**Prior to the 300-day Period Preceding the Filing of Roos's EEOC Charge[1]**

15.     Lilly was hired as the Director of Special Education for AISD in mid-2007.

16.     Shortly after Lilly arrived at AISD, in August 2007, Roos complained of racial discrimination after Roos was subjected to disparate harassment and a disparate reprimand by Lilly.

17.     Lilly had harassed and reprimanded Roos via email related to the writing of a letter in response to a parent complaint even though such letters were not typically written by SpEdCs and Lilly had not informed Roos that she was expected to send such a letter prior to reprimanding Roos and demanding that Roos stop what she was doing to immediately to write the letter.  Lilly harassed Roos so severely, that Roos felt ill and had to miss the first day of a conference in Houston due to the stress caused by Lilly.

18.     Lilly also reprimanded Roos for having failed to get permission to attend the conference even though no permission was ever required before, other employees attended the

---

[1] Roos's EEOC Charge is dated August 12, 2011.  October 16, 2010 is 300 days prior to that date.

conference without permission, the conference did not conflict with Roos's summer duties, Special Education was not paying for that conference, Roos had not been informed that permission was a prerequisite to attend, and no similarly situated co-workers who are not African American and had not engaged in protected activities were reprimanded.

19.     Lilly also disparately harassed Roos by subjecting her to a peer review when the similarly situated non-African American SpEdCs were not subjected to such a peer review even though the performance of several of those individuals was lower than Roos (given that Roos's evaluation was "Exceeds Expectations" that year and several of Roos's campuses met AYP that year, and Roos had not violated State law in the advice that she had given to her campuses, unlike at least one other SpEdC, John Fuerst.

20.     Following Roos's complaint of discrimination, Special Education Director Janna Lilly ("Lilly") informed Roos before posting the position that she was creating a new Special Education Administrative Supervisor position.  Lilly stated that the person chosen for the promotion would be one of the middle school SpEdCs.  There were only 3 middle school SpEdCs: Mary Anne Rogalewski (white), John Fuerst (white), and Roos.  Furthermore, Lilly stated that the responsibilities for Rogalewski & Roos, as middle school SpEdCs, would change when the new supervisor was selected.  Thus, the selection of John Fuerst was apparently pre-determined before the position was posted.

21.     Roos was the most qualified SpEdC for this promotion.

22.     Between 2007 to the present, Roos was the only SpEdC provided paid professional development out of Lilly's budget on merely three occasions (one each in 2007, 2009, and 2010).  For the same period of time, the non-African American SpEdCs and SpEdCs

that had not engaged in protected activity were provided paid professional development approximately 10 times (an average of 2 per year).

23.     The consistent denial of professional development to Roos included the use of pretextual and disparate (in terms of race and/or protected activity) excuses (e.g., applied late even though Roos applied the first day it was announced and other SpEdCs that were allowed to go applied after Roos had applied).

24.     Roos was harmed by not being allowed to attend professional development in the same amounts or consistency as her co-workers by being negatively impacted on her evaluations, the performance of her duties, her promotional opportunities, her pay, and her access to professional recognition, and other advanced training.

25.     Lilly instituted a new rule that no one in Special Education could attend or receive any professional development without her pre-approval.  This appeared to be a race (or protected activity) neutral rule applicable to everyone, however, Roos later learned that it was disparately enforced against her and not against the non-African Americans or employees that had not engaged in protected conduct.

26.     Lilly and Ann Jinkins, Roos's supervisor, began to disparately harass Roos with unsupported allegations of poor performance at least yearly from 2007 through to the present.

27.     Roos was denied professional development in late 2007 while only non-African American employees were allowed to attend by Lilly.

28.     Roos was harassed by Lilly by being disparately sent to a conference with a white employee assigned to attend with her to "watch her" and stay in her hotel room when that white employee had no professional role to play with AISD related to the topic of the conference when

another African American Special Education administrator, Dr. Jeanne Spencer, was available and professionally linked within AISD to the topic of the conference.

29.     Roos was disparately denied mediation training in May 2008 when Roos was not able to attend the first day of the training due to being assigned by Lilly to attend a Region XIII focus team meeting, even though a white employee, Caroline Chase, was allowed to attend the same mediation training when she was not able to attend the first day for non-business related reasons.

30.     Roos submitted a written complaint to Lilly in August 2008 regarding being held to higher standards of accountability than similarly situated non-African American and other employees that have not engaged in protected activity.

31.     AISD did not investigate Roos's complaints of discrimination and retaliation in violation of AISD's written policies until the Spring of 2011.

32.     Roos was disparately harassed by being assigned larger workloads and more job responsibilities, including job duties that were specifically assigned to Roos's supervisors and managers, than her similarly situated co-workers who are not African American and had not engaged in protected activities.

33.     Roos was further harassed by Lilly by disparately being denied access to secretarial and/or administrative support related to not only the additional duties but also Roos's normal duties while the similarly situated co-workers who are not African American or had not engaged in protected activity were allowed free access to that support.

34.     Roos was disparately denied access to promotions from 2008 to the present until she "proved herself" when none of the non-African American or employees that had not engaged

in protected activity were similarly required as established by the differences in their respective workloads, annual evaluations, and promotions.

35.     Roos was harassed in June 2008 by disparately being required to justify her requests for vacation while similarly situated co-workers who are not African American or had not engaged in protected activity were not similarly required.

36.     Roos was harassed by being disparately inhibited from promotions from 2008 to the present by Lilly stating that Roos would not be considered for promotions until her reports on Academically Unacceptable monitoring were brought up to the standard of her non-African American co-workers even though AISD representatives already consistently considered Roos's reports among the best at that time and no similarly situated co-workers who are not African American or had not engaged in protected activity was held to such a standard.

37.     Roos was harassed in September 2009 by being yelled at by Lilly in a meeting with Lilly, Jinkins, and AISD HR representative Laura Otey, and directed to adhere to disparate requirements to meet with and/or question her supervisors to which similarly situated co-workers who are not African American or had not engaged in protected activity were not required to adhere.

38.     Roos was harassed by Lilly by having her proposal for the creation of a supervisor position within Special Education that the AISD Superintendent approved downgraded by Lilly to a lateral move rather than a promotion, changed the funding of the position to AARA/Stimulus funds that would expire after two years, and then offered to position to Roos, thus placing Roos's employment position in danger of elimination at the end of the federal funding.

39.     Of the six positions that Lilly presented to AISD for transition to AARA/Stimulus funds from AISD funds, three were African American (in fact, all three of the African

Americans' positions in the Special Education department (each with exemplary performance evaluations) were on that list), one was Hispanic and the last two employees on the list were white part time employees – therefore, no full time white employee would be in danger of losing their jobs at the end of two years when the stimulus funds ceased.  Additionally, the only African American supervisor in the Special Education department (who had been promoted under the Special Education Director prior to Lilly and the only administrator with a doctorate degree), Dr. Jeanne Spencer, was on that list of six employees.

40.     Roos was paid less than lower qualified, lower degreed, less tenured, and lower performing similarly situated co-workers who are not African American or had not engaged in protected activity to include but not be limited to Mary Anne Rogalewski.

41.     Roos was harassed by Lilly, Jinkins, and AISD HR, by being disparately required to meet different and more onerous standards to receive a paid medical leave of absence when similarly situated co-workers who are not African American or had not engaged in protected activity were not held to those standards including but not necessarily limited to Judy Mayo, Thomas Hansen, and Susan Dodd.

42.     Roos was denied a promotion in August 2010 for the same supervisor position that she had proposed and had been approved by the Superintendent, but now the position had a different title, was a promotion, and was now under AISD funding.  The position was given to an employee who was a less qualified, lower degreed, and less tenured similarly situated white co-worker who had not engaged in protected activity; namely Cynthia Edwards.

43.     Roos was harassed in September 2010 by Jinkins disparately assigning Jinkins's professional responsibilities and duties to Roos when similarly situated co-workers who are not

African American or had not engaged in protected activity were not assigned such additional duties.

44.     Roos was harassed in September 2010 by disparately being required to justify her requests for vacation while similarly situated co-workers who are not African American or had not engaged in protected activity were not similarly required.

45.     Roos was harassed in October 2010 by Jinkins disparately denying Roos mediation training allegedly due to Roos having taken vacation, however similarly situated co-workers who are not African American or had not engaged in protected activity were not denied mediation training even though they had also taken vacation.

46.     Roos was harassed by Jinkins in October 2010 by having a disproportionate number of high-needs severe behavior challenged students to the campuses assigned to Roos compared to those types of students assigned to similarly situated co-workers who are not African American or had not engaged in protected activity.

**Within 300 Days of the Filing of Roos's EEOC Charge**

47.     Roos was publicly humiliated and berated by Jinkins yelling at, refusing to cease yelling at, and following Roos around the room in front of other employees on January 26, 2011. Jinkins was disparately attempting to force Roos to make a decision on the placement of a SpEd student on a campus, even though Roos had pointed out to Jinkins that Roos did not have the authority to place a student and that such a decision was Jinkins's responsibility.

48.     No similarly situated co-workers who are not African American or had not engaged in protected activity had ever been pressured/treated to exceed the scope of their authority or otherwise publically berated in this manner by Jinkins.

49.     Roos made a formal complaint to AISD regarding this severe harassment.

50.     In relation to the issue for which Jinkins was yelling at Roos on January 26, 2011, Jinkins made a racially disparate decision related to the placement of an African American student and the denial of paid transportation for that student compared with Jinkins's decision providing paid transportation to a white student at the same school who lived farther from the campus.

51.     Dr. Spencer complained to Jinkins and Lilly about Jinkins's racially disparate decision related to the student described above as well as of Jinkins public humiliation of Roos.

52.     Roos was denied an interview and a promotion to Assistant Director of Special Education, Curriculum and Instruction, in February 2011.  The promotion was given to John Fuerst making this the second promotion that AISD gave to Fuerst instead of Roos.  Roos was informed by AISD that there were only 3 qualified candidates however the applications for the position establish that there were actually 39 qualified applicants; including Roos.  Roos had twice the administrative experience than Fuerst and more experience in curriculum and instruction as well.  Also, on information and belief, Roos's references were also substantially superior to Fuerst's references.

53.     Roos was harassed by Jinkins in March 2011 by disparately making unsupported accusations against Roos of poor performance when the duty was not Roos's to begin with. Roos complained of this discriminatory and/or retaliatory harassment and provided a detailed explanation of her conduct and performance related to assisting Rogalewski in her duties, which Rogalewski had volunteered to take responsibility for and which Roos had voluntarily offered to to assist Rogalewski on and also explained that Rogalewski had not complained of Roos's conduct.  Rogalewski was not harassed regarding the performance of those duties even though they were Rogalewski's responsibility in the first place.

54.    Roos was harassed by Lilly, Jinkins, and Fuerst beginning in March 2011 by sending Roos threatening emails that disparately questioned Roos about, denied reimbursement of, and threatened future denial of travel advances.  This harassment related to a Final Travel Report that Roos had timely and accurately submitted seven months before on August 2, 2010.

55.    Not only was Roos being disparately harassed for no legitimate reason since she had accurately accounted for and reported her expenses, but Fuerst had actually preapproved the expenses before Roos even went on the trip and after Roos's return and proper and timely submission of documentation, Fuerst reversed his approval of charges which caused the alleged discrepancy in the accounting.

56.    There was no legitimate basis for this harassment or denial of reimbursement or requirement that Roos pay back the reimbursed funds since Roos had properly accounted for and documented the preapproved expenses.

57.    Roos was harassed by Jinkins and Fuerst in March 2011 by being disparately assigned additional work duties not assigned to the SpEdCs other than the Middle School SpEdCs.  There were only two MS SpEdCs at that time, Roos and Rogalewski.  Rogalewski was not at that meeting where Roos was being assigned these substantial additional duties.  Despite Roos's objections and disparity of the work being placed on Roos and Rogalewski, Jinkins and Fuerst refused to change the work assignment.  A few weeks later, only after Rogalewski complained of the amount of additional work, did Jinkins agree to substantially lower the amount of work for Rogalewski and Roos.

58.    Roos was denied equal pay to what her similarly situated co-workers who are not African American or had not engaged in protected activity with only 3 years of administrative experience were making while Roos has over 10 years of experience and a Masters degree.  Roos

has repeatedly requested salary reviews, but AISD has repeatedly refused to adjust her pay. Roos asked again in April 2011 and was denied the pay adjustment.

59.     Roos was harassed in March 2011 by Jinkins by being reprimanded for requesting to be excused from a Middle School Department Chair meeting to attend a Critical Case ARD meeting on one of Roos's assigned campuses, however, similarly situated co-workers who are not African American or had not engaged in protected activity, including Rogalewski, were allowed to miss such meetings to attend Critical Case ARD meetings (which involve the campuses specifically requesting the assistance of the SpEdCs given the contentious nature of such meetings).  Being denied the ability to attend a Critical Case ARD could result in a campus becoming dissatisfied or upset with their assigned SpEdC and could therefore negatively impact the SpEdCs' performance ratings.

60.     AISD conducted an investigation beginning in April 2011 of Roos's complaint of discrimination from January 2011.  This is the first investigation of Roos's complaints of discrimination that she is aware of even though she had been complaining beginning no later than 2007.

61.     AISD's investigation was conducted by an attorney that AISD retained from a private law firm.  On information and belief, the attorney did not interview a most of the witnesses that Roos identified in support of her allegations of discrimination and retaliation.  The outside attorney is reported by AISD to have concluded that his investigation found no racial discrimination despite the lack of contact with Roos's witnesses.

62.     Roos was harassed by Fuerst in April 2011 by disparately denying her the ability to reschedule her promotional interview due to a medical emergency involving Roos's daughter. Other similarly situated co-workers who are not African American or had not engaged in

protected activity (including but not necessarily limited to, Melissa DeLeon, Victoria O'Neal, and Paulette Garza) were provided accommodations due to their health-related inability to attend a scheduled interview and/or allowed to be interviewed via telephone.  No such options were offered or provided to Roos.  On information and belief, Roos was the most qualified person for that promotion.

63.    Roos was harassed by being presented with a disparately fabricated and/or unsupported "memo of concern" in April 2011 alleging performance deficiency which was later used to justify lower performance ratings on the 2010-2011 annual evaluation as well as negatively impacting Roos's promotional opportunities in the Spring and Summer of 2011.  On information and belief, no similarly situated co-workers who are not African American or had not engaged in protected activity were subjected to this type of harassment.

64.    Roos was harassed by Fuerst in May 2011 by disparately assigning Roos additional duties that were not given to any other similarly situated co-workers who are not African American or had not engaged in protected activity.  These duties related to written invitations and tracking of correspondence that were clerical in nature, not administrative, not related to Roos's job duties, and were being assigned to Roos at the end of the year when SpEdC's duties and responsibilities greatly increase.

65.    Roos complained of this disparate and retaliatory assignment and Fuerst responded by announcing that a white male, Hansen, would be assisting with the project, however, Hansen was not held accountable for the clerical assignment or for any other measurable duty and Hansen's annual evaluation did not reflect this additional assignment while Roos's evaluation was negatively impacted by this additional assignment and on information and belief, no similarly situated co-workers who are not African American or had not engaged in

protected activity had their annual evaluations impacted by an assignment outside of their job descriptions.

66.     Roos learned after the fact that in April 2011, from Kathryn "Missy" Hunt, SpEd Department Chair at Burnet Middle School (one of the campuses assigned to Roos as a SpEdC), that Jinkins had verbally requested that in providing the end of the year evaluations/feedback on Roos's performance that Hunt focus on any weaknesses or negatives performance examples, which Hunt refused to do given Roos's positive and helpful performance.

67.     Roos learned after the fact that in June 2011, Lilly had specifically requested reports of misconduct related to disturbing the secretarial staff from doing their jobs from Special Education Department secretarial staff regarding the only two African American administrators in the department, Dr. Spencer and Roos.  The secretaries denied that Dr. Spencer and Roos had engaged in any such conduct.  One of the secretaries specifically asked Lilly why she was asking about Dr. Spencer and Roos, the only two African American administrators when they had not been bothering the secretarial staff and the non-African American employees were the employees hanging around their area.

68.     Later that day, on information and belief, Lilly sent several emails related to the communications between herself and the secretaries earlier that day.  One of the secretaries, Susie Mora, reported that Lilly's emails in addition to being set up where it was not possible to forward, copy, or print them, also variously had omissions and misrepresentations of fact which reflected badly on Dr. Spencer and Roos and which were not true.  No similarly situated co-workers who are not African American or had not engaged in protected activity was subjected to such focused efforts to obtain or fabricate negative information by Lilly or the other Special Education managers.

69.     Roos was harassed by being denied access to secretarial staff while similarly situated co-workers who are not African American or had not engaged in protected activity were openly allowed to use the secretarial staff in the performance of their duties.

70.     Roos was harassed by Jinkins and Fuerst in May and June 2011 by being disparately evaluated compared with similarly situated co-workers who are not African American or had not engaged in protected activity including but limited to:

- "Unsatisfactory" rating on "Completes tasks accurately and timely" even though similarly situated co-workers who are not African American or had not engaged in protected activity who had missed the same deadline were not given the same low rating and even though similarly situated co-workers who are not African American or had not engaged in protected activity and Jinkins had missed a deadline to complete Region XIII training by more than four months while Roos had met that deadline.
- Being evaluated on summer job duties,
- Being evaluated on duties that were not a part of the SpEdC's job description,
- Being evaluated on projects that other SpEdC's were assigned yet they were not evaluated,
- Being negatively evaluated due to medically necessary and justified leave

71.     Roos was harassed by Jinkins and Whetstone in 2011 by disparately being required to comply with reporting, documentation, and approval processes related to leave with which similarly situated co-workers who are not African American or had not engaged in protected activity did not have to comply.

72.     Roos was harassed by Jinkins in June 2011 by publicly and disparately reprimanding Roos for not following the disparate requirements of notifying SpEd management of Roos's being unable to come to work, even though Roos had been in a car accident and had provided multiple forms of notice and attempts to provide notice, which were in excess of the requirements of similarly situated co-workers who are not African American or had not engaged in protected activity.

16

73.     Roos was harassed and disparately treated by Jinkins and AISD by being denied fair non-discriminatory and non-retaliatory promotional processes given that Jinkins was on the interview panels for the promotions that Roos was applying for and the similarly situated co-workers who are not African American or had not engaged in protected activity had principals from the schools that they supported on their interview panel while Roos did not have that added benefit.

74.     On information and belief, Roos is substantially more qualified for the promotion than Whetstone.

75.     All promotions from within Special Education since Lilly has been the director have all been non-African American (zero out of approximately 14 promotions).

76.     The only time that a person has been hired into a supervisor's position from outside of the Special Education Department since Lilly has been the Director has been the hire of an African American, Nicole Whetstone, who was hired for the purpose of terminating Roos and attempting to avoid the appearance of race discrimination as a factor in that termination due to Whetstone being African American.

77.     The hiring of Nicole Whetstone, who was inserted as Roos's supervisor between Roos and Jinkins, followed Roos's complaint of discrimination and retaliation against Jinkins in January 2011 and the subsequent investigation, which was completed just before Whetstone was hired.

78.     Two individuals have sworn that while they were AISD employees they received confirmation from Jinkins and Whetstone that Lilly and Jinkins had hired Whetstone as Roos's supervisor because Whetstone is African American and because it would be easier to terminate Roos with an African American supervisor.

79.     Whetstone was hired within one month of Roos receiving a meets expectations annual evaluation.

80.     Roos has been placed on work-related stress leave by order of medical professionals due to the harassment she has been subjected to at least five times since January 2010, to include three times within 300-days of the filing of her charge of discrimination and retaliation with the EEOC.

81.     Roos was harassed by again being denied the ability to attend a work-related TCASE conference in July 2011, while Rogalewski, who had been RIF'd and then rehired was allowed to attend.

82.     Roos was harassed by Jinkins in July 2011 by being assigned the smallest work space while a larger workspace was available and while she was the only African American SpEdC.  Roos specifically requested that she be allowed to take the open work station however, Jinkins informed her that was being saved for a new SpEdC that was to be hired.  However, after that employee was hired, the white SpEdC that was working next to Roos's smallest space complained about her lack of space (which was greater than Roos's) and Jinkins allowed her to occupy the empty workspace.

83.     Roos was harassed by Jinkins and Whetstone by being denied access to an updated computer when similarly situated co-workers who are not African American or had not engaged in protected activity had received updated computers even though Roos and at least one of Roos's co-workers had reported to Whetstone that Roos's computer was too slow and was making it difficult for Roos to complete her assignments on time.

84.     Roos was subsequently harassed by being reprimanded for not meeting deadlines when Whetstone and Jinkins had specifically denied her access to a reasonably functioning

computer and other resources, while no similarly situated co-workers who are not African American or had not engaged in protected activity was similarly mistreated.

85.     Roos was harassed by Jinkins, Lilly, and Whetstone by disparately being required to comply with the following workplace rules that were either not required of or not enforced against similarly situated co-workers who are not African American or had not engaged in protected activity:

- arrive at work at 7:45am,
- keep electronic calendars up to date without any allowable delay,
- get permission to go to assigned campuses,
- extensive notification process for absences or leave,
- approval process for leave,
- restricted from asking questions,
- reprimands for taking "too much" leave when comparable to similarly situated co-workers who are not African American or had not engaged in protected activity,

86.     Roos was harassed by Whetstone by not being notified, being notified late, or being notified in a different manner of meeting location and/or time changes and then disciplined for not having attended the meeting when compared to similarly situated co-workers who are not African American or had not engaged in protected activity.

87.     Roos was harassed by Whetstone by being disparately accused of the following fabricated or factually unsupported allegations of misconduct compared to similarly situated co-workers who are not African American or had not engaged in protected activity:

- Performance deficiencies as documented in writing,
- Failure to fulfill duties and responsibilities,
- Incompetence or inefficiency,
- Insubordination or failure to comply with official directives,
- Failure to comply with Board Policies or administrative regulations,
- Failure to comply with reasonable requirements regarding advanced coursework or professional improvement or growth,
- Failure to maintain an effective working relationship, or maintain good rapport, with partents, the community, or colleagues,
- Not being at a location that the electronic calendar says that employee "should" be,

- Rude and unprofessional conduct,
- Not having an updated electronic calendar,
- Not meeting deadlines

88.   Roos was harassed by Whetstone by being placed on a growth plan based upon false and/or unsupported allegations of poor performance.

89.   Roos was harassed by Whetstone by being recommended for non-renewal based upon false, generalized, vague, and/or unsupported allegations of poor performance.

90.   AISD has repeatedly refused to take action to protect Roos from race discrimination, retaliation, and/or hostile work environment even though AISD has been on notice of the intentional, disparate, and illegal adverse actions that Roos has suffered under consistently for nearly five years.

## DAMAGES

91.   Because of statutorily impermissible acts of AISD and its representatives as discussed above, Roos has suffered lost of income, loss of benefits, loss of career opportunity, loss of career investment and loss of advancement.  As a consequence of the outrageous actions by AISD, Roos has suffered humiliation, loss of standing in the community, emotional pain and suffering, inconvenience, loss of enjoyment of life, irritation and mental anguish.  Roos seeks injunctive relief as well as compensatory, and equitable damages as well as attorney's fees and costs and pre and post judgment interest in the maximum amounts allowed by law.

## RELIEF REQUESTED

Paragraphs one (1) through ninety-one  (91) of this complaint are incorporated by reference and made a part of Relief One through Relief Five, inclusive.

## EQUITABLE RELIEF

### Relief One

Roos has no plain, adequate or complete remedy at law to redress the wrongs alleged, and this suit for injunctive relief and equitable and compensatory damages is the only means of securing adequate relief.  Roos suffered, and is now suffering and will continue to suffer irreparable injury from the policy, practice, custom and/or usage of AISD as set forth herein until and unless enjoined by the Court. 42 U.S.C. 2000e et seq.  Additionally, the Court is requested after notice and hearing to order AISD to conduct seminars and other counseling of AISD management representatives as part of educational sensitivity, anti-discrimination, and anti-retaliation training processes.

### Relief Two

Roos seeks an award of back pay and front pay for the loss of income as a result of the racially disparate treatment based discriminatory, and/or retaliatory conduct of AISD and its representatives during Roos's employment and as a result of her experience.

### Relief Three

Roos seeks awards of pre- and post-judgment interest on any amounts awarded to her.

## LEGAL RELIEF

### Relief Four

Under 42 U.S.C. §§ 2000e et seq., Roos is entitled to compensatory, expectation, and/or consequential damages due to the illegal conduct of AISD as alleged herein to include for the continuing violations of harassment and hostile work environment going back as far as August 2007.

**Relief Five**

Under 42 U.S.C. §1988 and §§ 2000e et seq., Roos is entitled to reasonable attorney's fees, expert fees, and costs.

**PRAYER FOR RELIEF**

Roos requests the Court to cause AISD to be cited to appear and answer in this Court, and that upon final hearing, the Court grant to Roos as follows:

1.   Grant Roos injunctive relief enjoining AISD, its agents, successors, employees, and those acting in concert with them or at their direction from continuing to abridge the rights of Roos;

2.   Grant Roos injunctive relief ordering AISD, its agents, successors, employees, and those acting in concert with them or at their direction under Court supervision injunctive relief as delineated above for a period of at least five years;

3.   Grant Roos all equitable damages including lost back pay, front pay, benefits and profits;

4.   Grant Roos compensatory damages for AISD's acts of discrimination, retaliation, and hostile work environment against her;

5.   Grant Roos prejudgment and post-judgment interest in the highest amount allowable by law;

6.   Grant Roos reasonable attorney's fees, together with her costs; and

7.   Such other and further relief as the Court determines just and equitable in the circumstances of this case.

Respectfully submitted,


_____/s/ Robert Notzon_____

Robert Notzon
The Law Office of Robert Notzon
Texas Bar No. 00797934
1507 Nueces Street
Austin, Texas 78701
(512) 474-7563
(512) 852-4788 facsimile
ATTORNEY FOR PLAINTIFF

# EXHIBIT A

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [X] FEPA | 650-11-277 |
| | [X] EEOC | 36A-2011-00279 |

| Austin Equal Employment/Fair Housing Office | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Myrna L. Roos | (512) 310-7081 | 04-28-1951 |

| Street Address | City, State and ZIP Code |
|---|---|
| 4092 Bluffside Ln, Round Rock, TX 78665 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| AISD | 500 or More | (512) 414-1700 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1111 W. 6th St, Austin, TX 78554 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

[X] RACE  [ ] COLOR  [ ] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN

[X] RETALIATION  [X] AGE  [ ] DISABILITY  [ ] GENETIC INFORMATION

[ ] OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 08-07-2007   Latest: 08-11-2011

[X] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I have consistently and continuously been treated differently than my co-workers due to my race, African American, and/or due to my complaints of race discrimination and retaliation, since no later than August 7, 2007, by my supervisors, Ann Jinkins, John Fuerst and/or manager, Janna Lilly.

Specifically, in the last 300 days, I have been disparately treated in the following ways: On or about February 24, 2011, April 21, 2011 and July 1, 2011, I was denied promotions and denied promotional opportunities. I believe I was better qualified than the candidates that were selected and or interviewed for the positions.

From August 7, 2007 to present harassment has been ongoing, I have been harassed about leave, held to different standards and work rules, falsely accused of misconduct or poor performance, publicly humiliated, given unsupported poor performance evaluation, denied professional development, targeted in an effort to elicit negative information about me from other employees, and generally been subjected to a hostile work environment. The hostility has been so severe or pervasive that I have been forced to take leave at my doctor's order to protect my health.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| | Janice D. Yarbrough |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 8/12/2011    *Myrna L. Roos* | *Myrna L. Roos* |
| Date    Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| | JANICE D. YARBROUGH Notary Public, State of Texas My Commission Expires April 15, 2012 |

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| [X] FEPA | 650-11-277 |
| [X] EEOC | 36A-2011-00279 |

**Austin Equal Employment/Fair Housing Office** and EEOC

*State or local Agency, if any*

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

## Continuation Sheet

From August 7, 2007 to present I have been paid less than my non-black female co-worker and other less qualified co-workers.

On or about December 2010 and on other occasions, I was denied the opportunity to attend training. I believe I was treated less favorably than my non-Black co-workers. I also believe this occurred because I complained of discrimination based on my race.

I believe I have been discriminated against because of my race (black), age (60) and retaliated against for reporting discrimination which is in violation of Title VII of the Civil Rights Act of 1964, as amended, The Age Discrimination in Employment Act of 1967 and the Texas Commission on Human Rights act, as amended.

---

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

8/12/2011

*Date*

*Myrna L. Poss*

*Charging Party Signature*

NOTARY – *When necessary for State and Local Agency Requirements*

**Janice D. Yarbrough**

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

*Myrna L. Poss*

SUBSCRIBED AND SWORN TO BEFORE ME THIS
*(month, day, year)*

Aug 12 2011

JANICE D. YARBROUGH
Notary Public, State of Texas
My Commission Expires
April 15, 2012

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: Myrna L. Roos
c/o Robert Notzon
1507 Nueces Street
Austin, TX 78701

From: San Antonio Field Office
5410 Fredericksburg Rd
Suite 200
San Antonio, TX 78229

*On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 36A-2011-00279 | Jose Colon-Franqui,<br>Supervisor | (210) 281-7608 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

## - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit <u>must be filed WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

On behalf of the Commission

Travis G. Hicks,
Acting Director

February 9, 2012
*(Date Mailed)*

Enclosures(s)

cc:    AISD - Ylise Jansen (Senior Attorney)
1111 W. 6th St
Austin, TX 78554

US EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
SAN ANTONIO FIELD OFFICE
5410 FREDERICKSBURG ROAD SUITE 200
SAN ANTONIO, TX 78229-3555

AN EQUAL OPPORTUNITY EMPLOYER

UNITED STATES POSTAGE
PITNEY BOWES
02 1M
0004260110
$ 00.45⁰
FEB 09 2012
MAILED FROM ZIP CODE 78229

Myrna L. Roos
c/o Robert Notzon
1507 Nueces Street
Austin, TX 78701

78701150907